United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NETTA GRUTMAN,

Petitioner,

v.

THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,

Respondent.
_______________________________________/

Case No. C-10-02347 JCS

**ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT, DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S UCRA CLAIM [Docket Nos. 40, 43]**

## I. INTRODUCTION

This case involves claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 1201 *et seq.*, as well as California state law, based on the allegation that Defendant denied equal access to Plaintiff by weighting the outside entrance doors to her dormitory so that she was unable to open them due to a nerve injury to her arm and shoulder. Plaintiff notified the manager of the problem on September 3, 2009; on October 22, 2009 an automatic door opener was installed, thereby resolving the problem. The parties' summary judgment motions are aimed at Plaintiff's state law claim under the Unruh Civil Rights Act ("UCRA"), California Civil Code Section 52, which provides for statutory damages in the amount of "$4,000 for each incident of deterrence" in violation of the UCRA. In particular, the parties ask the Court to decide whether Plaintiff can recover $4,000 for "every instance in which she can demonstrate she was denied legally required equal access to the subject premises" during the seven weeks before the door was fixed, as Plaintiff contends, or rather, only a single award of $4,000, as Defendant contends. The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). A hearing on the motions was held on Friday, July 22, 2011 at 9:30 a.m. For the reasons stated below, both Motions are DENIED on the basis that the Court declines to exercise supplemental jurisdiction over Plaintiff's UCRA claim, which is dismissed.

United States District Court
For the Northern District of California

## II. BACKGROUND

### A. Facts[1]

Plaintiff claims that she began to experience disabling pain in her left shoulder and arm in August 2008.[2] Declaration of Jerome Schreiberstein on Defendants' Motion for Partial Summary Judgment ("Schreiberstein Decl."), Ex. A (Gruttman Depo.) at 17-18. She moved into the South Tower of UCSF Mission Bay Housing Complex on August 17, 2009 and moved out of the building in May 2010. *Id*. at 103-4. On September 3, 2009, Plaintiff sent an email to Todd McGregor, the Housing Services Manager at the complex, complaining that the door to the building was "very heavy to open and slam[med] shut immediately upon letting go of the door." Schreiberstein Decl., Ex. B, Depo. Exhibit 15. Plaintiff explained that this was a problem for her because she suffered from a shoulder and arm nerve injury, requiring her to use a roller book bag, and that she "struggle[d] to enter and exit the door everyday." *Id*.

After attempts to adjust the door did not alleviate the problem, UC installed an automatic door, on October 22, 2009, which addressed the problem to Plaintiff's satisfaction. Schreiberstein Decl., Ex. A (Grutman Depo.) at 131-132. In a declaration filed in support of her summary judgment motion, Grutman states that during the intervening weeks she was forced to use the doors "several times each day" and that there were "numerous times" when she could not enter or leave the building because she had to wait for another person to be available to hold the door for her. Declaration of Netta Grutman in Support of Motion for Partial Summary Judgment [Rule 56] ("Grutman Decl."), ¶ 7. She estimates that she "struggled with the noncompliant entry doors to the

---

[1]The parties did not file a joint statement of undisputed facts, as required under the Court's Standing Order. The Court excuses this violation of its Order because the issue raised by the parties is largely a legal question. To the extent that some limited factual background is necessary to understand the dispute, the Court relies on facts that it finds to be undisputed, based on the parties' briefs and supporting evidence.

[2]For the purpose of resolving the instant motions, the Court assumes that Plaintiff's condition is a disability that requires accommodation under the relevant statutes. The Court notes that this question is disputed, however. In particular, Defendant questions Plaintiff's credibility, pointing to an essay written by Plaintiff to gain admission to Hastings College of Law describing her struggle with Lyme Disease – a condition for which Plaintiff was unable to recall at her deposition ever having received a diagnosis or any treatment. When asked whether the statements in her essay were true, Plaintiff responded that she could not remember and that she did not know whether she had ever battled Lyme disease. *See* Schreiberstein Decl., Ex. A at 29-30.

South building an average of about 6 times every day." *Id.*, ¶ 14. Records of electronic key card swipes provided by UC indicate that Plaintiff used the door many times between September 3, 2009 and October 22, 2009. *See* Declaration of Sergo Ornelas on Defendants' Motion for Partial Summary Judgment, Ex. A.

**B. The Motions**

In Plaintiff's Motion for Partial Summary Judgment ("Plaintiff's Motion"), Plaintiff asserts that under the UCRA, Cal. Civ. Code Section 52, she is entitled to minimum statutory damages of $4,000 for "each and every offense," and that each time she struggled with the non-compliant door or was deterred from using it constitutes a separate "offense." In support of this position, Plaintiff cites cases in which courts have concluded that a plaintiff is entitled to recover the minimum statutory amount for each visit to the noncompliant premises. Plaintiff's Motion at 7-8 (citing *Molsky v. Rapazzini Winery*, 400 F. Supp. 2d 1208, 1211 (N.D. Cal. 2005); *Organization for the Advancement of Minorities with Disabilities v. Pacific Heights Inn* 2006 WL 2560754 (N.D.Cal., September 5, 2006); *Freezor v. Del Taco, Inc.*, 431 F. Supp. 2d 1088 (S.D. Cal. 2005); *Johnson v. Doyle*, 2010 WL 235100 (E.D.Cal., Jan. 21, 2010) and *Hubbard v. Rite Aid*, 433 F. Supp.2d 1150 (S.D. Cal. 2006)). In addition, Plaintiff asserts that each incident of "deterrence" is a separate offense for which she is entitled to minimum statutory damages. Motion at 8-9 (citing *Arnold v. United Artist Theater Circuit*, 866 F. Supp. 433, 439 (N.D. Cal. 1994)).

Plaintiff notes that courts have reached differing conclusions as to whether "daily damages" are available under the UCRA for continuing violations, citing *Botosan v. Fitzhugh*, 13 F. Supp. 2d 1047, 1051-52 (S.D. Cal. 1999) (denying motion to strike claim for actual damages of $1,000 per day based on allegation that ongoing discrimination deterred plaintiff from visiting non-compliant restaurant) and *Doran v. Embassy Suites Hotel*, 2002 U.S. Dist. LEXIS 16116 (N.D. Cal. 2002), but that no California court or federal district court has addressed whether the UCRA allows for separate awards based on specific instances in which a plaintiff was deterred from trying to access a facility. Plaintiff also acknowledges that some district courts have declined to exercise supplemental jurisdiction over this issue. *Id.* (citing *Jankey v. Beach Hut*, 2005 WL 5517235 (C.D.Cal. Dec. 8, 2005)).

Defendant argues that the violation upon which Plaintiff's UCRA claim is based constitutes a unitary course of conduct that constitutes a single offense under the UCRA, permitting only a single award of statutory damages, in the amount of $4,000. Defendant's Motion for Partial Summary Judgment ("Defendant's Motion"), at 17. Defendant asserts that although no California court has yet addressed this issue, the deliberative history of Cal. Civ. Code Section 55.56, a provision adopted in 2008 as part of a statutory scheme amending the UCRA, reflects the intent of the California legislature to limit the availability of statutory damages under Cal. Civ. Code Section 52. Motion at 13-14; *see also* Request for Judicial Notice on Defendants' Motion for Partial Summary Judgment (requesting that the Court take judicial notice of the 8/28/08 Judicial Committee Analysis and 8/12/08 Senate Rules Committee Analysis for Senate Bill 1608).[3]

Defendant also looks to cases decided under the ADA, in which courts have held that a continuing failure to accommodate constitutes a continuing ADA violation. Motion at 12-13 (citing *Fielder v. UAL Corp.*, 218 F.3d 973, 987-88 (9th Cir. 2000); *Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104, 1108-11 (9th Cir. 1998)). According to Defendant, the conduct complained of in this case also should be viewed as a continuing violation and therefore, only one award of statutory damages should be permitted. In addition, Defendant looks to cases decided by California courts addressing similar damages provisions, arguing that they point to the conclusion that only one award of statutory damages should be permitted under Cal. Civ. Code Section 52. *Id*. at 14-16 (citing *Arnold v. Radisson Hotel*, 2011 U.S. Dist. LEXIS 742 (C.D. Cal. 2011); *Doran v. Embassy Suites Hotel*, 2002 U.S. Dist. LEXIS 16116 (N.D. Cal. 2002); *Hale v. Morgan*, 22 Cal. 3d 388 (Cal. 1978)).

## III. ANALYSIS

### A. Legal Standard Under Rule 56

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment must be supported by "facts as would be admissible in evidence."

---

[3]Plaintiff has not objected to Defendant's request, which is granted pursuant to Rule 201(b) &(d) of the Federal Rules of Evidence.

Fed. R. Civ. P. 56(e). In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to designate "specific facts showing there is a genuine issue for trial." *Celotex*, 477 U.S. at 323. On summary judgment, the court draws all reasonable factual inferences in favor of the non-movant. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 255 (1986).

**B. Statutory Background**

The UCRA provides that "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code Section 51(b). In 1992, the UCRA was amended to provide that "violation of the right of any individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section." Cal. Civ. Code Section 51(f). Damages for violations of the UCRA are set forth in Cal. Civ. Code Section 52, which provides as follows:

> Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to Section 51, 51.5, or 51.6, is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6.

Cal. Civ. Code Section 52(a). The California Supreme Court has held that the UCRA must be "construed liberally in order to carry out it's purpose," which is to "create and preserve a nondiscriminatory environment in California business establishments by banishing or eradicating arbitrary, invidious discrimination by such establishments." *Angelucci v. Century Supper Club*, 41 Cal. 4th 160, 167 (2007) (citations omitted).

In 2008, Cal. Civ. Code Section 55.56 was enacted to clarify when statutory damages are available under Section 52 based on construction-related accessibility. That Section provides, in part, as follows:

> (a) Statutory damages under either subdivision (a) of Section 52 or subdivision (a) of Section 54.3 may be recovered in a construction-related accessibility claim against a place of public accommodation only if a violation or violations of one or more construction-related accessibility standards denied the plaintiff full and equal access to the place of public accommodation on a particular occasion.
>
> (b) A plaintiff is denied full and equal access only if the plaintiff personally encountered the violation on a particular occasion, or the plaintiff was deterred from accessing a place of public accommodation on a particular occasion.
>
> (c) A violation personally encountered by a plaintiff may be sufficient to cause a denial of full and equal access if the plaintiff experienced difficulty, discomfort, or embarrassment because of the violation.
>
> (d) A plaintiff demonstrates that he or she was deterred from accessing a place of public accommodation on a particular occasion only if both of the following apply:
>
>> (1) The plaintiff had actual knowledge of a violation or violations that prevented or reasonably dissuaded the plaintiff from accessing a place of public accommodation that the plaintiff intended to use on a particular occasion.
>>
>> (2) The violation or violations would have actually denied the plaintiff full and equal access if the plaintiff had accessed the place of public accommodation on that particular occasion.
>
> (e) Statutory damages may be assessed pursuant to subdivision (a) based on each particular occasion that the plaintiff was denied full and equal access, and not upon the number of violations of construction-related accessibility standards identified at the place of public accommodation where the denial of full and equal access occurred. If the place of public accommodation consists of distinct facilities that offer distinct services, statutory damages may be assessed based on each denial of full and equal access to the distinct facility, and not upon the number of violations of construction-related accessibility standards identified at the place of public accommodation where the denial of full and equal access occurred.

Cal. Civ. Code Section 55.56. The Historical and Legislative Notes that accompany the enactment state, in part, as follows:

> . . . Subdivision (e) of Section 55.56 of the Civil Code, as added by Section 4 of this act, provides that not every violation of a construction-related accessibility standard constitutes a separate offense entitling a plaintiff to a separate award of statutory damages, even if the plaintiff personally encountered more than one violation. A restaurant, convenience store, or theater normally serves only one function -- a place to eat, shop, or watch a movie -- and

United States District Court
For the Northern District of California

> multiple violations of one or more construction-related accessibility standards at such a place do not constitute separate denials of full and equal access. By contrast, other places of public accommodation offer more than one type of service, facility, or other function. For example, a hotel or resort may offer sleeping rooms, a restaurant, a golf course, and a spa. Likewise, a shopping center may consist of one large common area and many separate stores and restaurants. If the place of public accommodation consists of such distinct facilities offering distinct services, statutory damages may be assessed based on each denial of full and equal access to the distinct facility, but not upon the number of violations of construction-related accessibility standards identified at the place of public accommodation where the denial of full and equal access occurred.

In *Munson v. Del Taco, Inc.*, the California Supreme Court described the 2008 enactment as follows:

> In its most recent regular session, moreover, the Legislature tackled the challenge of improving compliance with access laws while protecting businesses from abusive access litigation . . . . the new legislation (applicable to claims filed on or after January 1, 2009 (§ 55.57)) restricts the availability of statutory damages under sections 52 and 54.3, permitting their recovery only if an accessibility violation actually denied the plaintiff full and equal access, that is, only if "the plaintiff personally encountered the violation on a particular occasion, or the plaintiff was deterred from accessing a place of public accommodation on a particular occasion" (§ 55.56, subd. (b)). It also limits statutory damages to one assessment per occasion of access denial, rather than being based on the number of accessibility standards violated.

46 Cal. 4th at 677.

The Judicial Committee Analysis of the bill containing the 2008 amendments, Senate Bill 1608, states that the bill was "intended to reiterate [the] existing private enforcement rights, while at the same time creating incentives for compliance that reduce the need for private litigation, and providing measures that are intended to discourage frivolous lawsuits and threats of litigation and encourage early resolution efforts when disputes arise." Request for Judicial Notice, Ex. A. The Senate Rules Committee Analysis explains that the bill "seeks to acknowledge that a place of public accommodation may include distinct facilities that offer distinct services, the full and equal denial of access to which may lead to separate offenses . . . and that not every violation at a facility will constitute a separate full and equal access offense (e.g. a person staying at a hotel room with a defective bathroom in each of its 400 hotel rooms is denied full and equal access to the guestroom's bathroom he or she intends to access, but is not entitled to 400 statutory damages awards)." Request for Judicial Notice, Ex. B.

**C. Overview of Cases Awarding Statutory Damages under UCRA**

The critical issue raised by the parties is the meaning of the words "each . . .offense" in Cal. Civ. Code Section 52 in the context of the facts of this case. The parties agree that there is no case law that is directly on point. A review of the cases that have addressed the question of UCRA damages in other contexts is instructive, however.

In *Arnold v. United Artist Theater Circuit* (hereinafter, *"Arnold v. UA"*), individuals who used wheelchairs or crutches asserted claims under federal disability law as well as California's UCRA and Disabled Persons Act based on the allegation that the defendant's movie theaters did not afford proper access to disabled people. 866 F. Supp. 433, 434-435 (N.D. Cal. 1994). The defendant brought a motion to dismiss the plaintiffs' claims to the extent that plaintiffs sought statutory damages under the UCRA and the Disabled Person's Act for each instance in which they were deterred from attending the defendant's theaters because the theaters were not accessible. *Id*. at 435. Judge Henderson found that the UCRA was ambiguous as to whether such deterrence damages were available and that existing California case law did not address the question. *Id*. at 437-438. Therefore, the court looked to legislative intent to resolve the question. *Id*. at 438. The court stated as follows:

> California courts have applied a canon of broad construction to civil rights statutes generally, and to § 51 and § 54.1 in particular. Regarding § 51, the [UCRA], "The [California] Legislature's desire to banish [discrimination] from California's community life has led [the California Supreme Court] to interpret the [UCRA's] coverage 'in the broadest sense reasonably possible.' " . . . A similar presumption in favor of broad interpretation in order to further the statute's remedial purpose has been applied in § 54.1 cases. . . . In particular, California courts have held that the California disability access laws should be interpreted in a fashion that maximizes the incentives for places of public accommodation to comply with the laws' requirements.

*Id*. The court concluded, in light of the UCRA's remedial purpose, that statutory damages were available for incidents of deterrence, noting that federal courts had reached a similar conclusion with respect to Title VII of the 1964 Civil Rights Act, 42 U.S.C. §§ 2000e *et seq*., which also was ambiguous as to whether it rendered incidents of deterrence actionable. *Id*. In *Lentini v. California Center for the Arts*, the Ninth Circuit implicitly approved this holding, finding that there was sufficient evidence to support the district court's award of statutory damages under Section 52 in that case based on seven separate performances at the defendant's theater where there was evidence

that the plaintiff would have attended each of those performances if it were not for the barriers to accessibility that the defendant had not remedied. 370 F.3d 837, 848 (9th Cir. 2004).

Citing *Arnold v. UA*, another district court, in *Molski v. Rapazzini Winery*, found that "each offense" in Section 52 "is each time the plaintiff visits the non-compliant place of public accommodation or each specific instance in which the plaintiff is deterred from attempting to visit. 400 F. Supp. 2d 1208, 1211 (N.D. Cal. 2005). In that case, the court addressed a motion to declare the plaintiff a vexatious litigant. *Id*. at 1211. The plaintiff asserted claims under federal and state disability law, including the UCRA, based on barriers at a winery that he alleged rendered the facility unaccessible and resulted in discrimination against him on the basis of his disability during his one visit to the winery. *Id*. He sought daily damages for each day from the time of his visit until the barriers were removed under Section 52(a). *Id*. The court, however, found that the request was frivolous, concluding that Section 52(a) does not provide for daily damages but rather, allowed for only one award of statutory damages for the plaintiff's single visit to the defendant's winery. *Id*. at 1211-1212. With respect to the availability of daily damages, the court relied on the careful analysis of that question by Judge Laport in *Doran v. Embassy Suites Hotel*, 2002 U.S. Dist. LEXIS 16116 (N.D. Cal. 2002).

In *Doran*, the court looked to California cases in which statutory damages provisions similar to the one contained in Section 52 were interpreted and concluded that "those cases indicate that the phrase, 'for each offense,' like the phrase 'for each violation' [that is used in the provisions at issue in those cases] provides for statutory damages based on each specific instance of non-compliance, rather than on the mere passage of time." *Id.* at * 15-16. Accordingly, the court granted the defendant's motion to strike a request for daily damages by the plaintiff, who sought damages for each day that barriers to access were not removed following his stay in the defendant's hotel. *Id*.

The court in *Doran* declined to adopt the reasoning of another district court in *Botosan v. Fitzhugh* on the question of daily damages. 13 F. Supp. 2d 1047, 1051-52 (S.D. Cal. 1999). In that case, the court denied a motion to strike a request for daily damages under the UCRA where the plaintiff alleged that he had visited the allegedly noncompliant restaurant only once. *Id*. The court relied on the plaintiff's allegation that he could not return to the restaurant because of the

defendant's failure to remedy the problems, reasoning that "[r]ead in the light most favorable to Plaintiff, this means that Plaintiff was claiming that he had been deterred from going to . . . restaurant on a daily basis." *Id.* at 1051. The *Botosan* court relied on *Arnold v. UA* in support of this conclusion. *Id*. The *Doran* court rejected this reasoning, however, noting that daily damages were not at issue in *Arnold v. UA*. 2002 U.S. Dist. LEXIS 16116 at * 17.

A number of courts have followed *Molski v. Rapazzini Winery* in the context of visits to hotels and restaurants, awarding a single award of statutory damages for "each time a plaintiff visits (or is deterred from visiting) a non-compliant establishment, even if the establishment contains numerous architectural barriers." *Organization for the Advancement of Minorities with Disabilities v. Pacific Heights Inn*, 2006 WL 2560754 (N.D. Cal., September 5, 2006) (single award of statutory damages under Section 52(a) on the basis that one-night stay at inn was a single occasion, even though the plaintiff encountered numerous barriers to access); *Freezor v. Del Taco, Inc.*, 431 F. Supp. 2d 1088 (S.D. Cal. 2005) (three awards of statutory damages under Section 52(a) based on three visits to restaurant where plaintiff encountered architectural barriers where visits were approximately one year a part); *Hubbard v. Rite Aid*, 433 F. Supp.2d 1150 (S.D. Cal. 2006) (three awards of statutory damages under Section 52(a) based on three visits to store where plaintiff encountered architectural barriers, including door that "opened hard" ); *see also Arnold v. Radisson Hotel* (hereinafter, "*Arnold v. Radisson*"), 2011 U.S. Dist. LEXIS742 (C.D. Cal. Jan. 5, 2011) (awarding $10,000 in actual damages under California Disabled Persons Act, which provides for actual damages for "each offense" of no less than $1,000, based on the number of barriers the plaintiff encountered during three-day stay at hotel, where one of the architectural barriers was the heavy weight of the guest room door). None of these cases addresses the question of whether the need to go through a non-compliant door more than once during a visit might give rise to separate awards of damages.

Several federal district courts have declined to exercise supplemental jurisdiction over UCRA claims seeking statutory damages on the basis that: 1) they raise novel and complex questions of state law because the term "each and every offense" used in Section 52 is ambiguous and there is no California case law providing guidance as to its meaning; and 2) the UCRA claim for

United States District Court
For the Northern District of California

statutory damages predominated over the ADA claim for injunctive relief. *See Organization for the Advancement of People with Disabilities v. Brick Oven Restaurant*, 406 F. Supp. 2d 1120 (S.D. Cal. 2005) (citing conflicting conclusions of *Doran* and *Botosan* with respect to "each offense" language of Section 52 as evidence of ambiguity of UCRA as to availability of statutory damages); *Molski v. Hitching Post I Restaurant*, 2005 U.S. Dist. LEXIS (C.D. Cal. May 25, 2005) (same); *Jankey v. Beach Hut*, 2005 WL 5517235 (C.D.Cal. Dec. 8, 2005) (same).

**D. Whether the Court Should Exercise Supplemental Jurisdiction over Plaintiff's UCRA Claim**

A federal court's exercise of supplemental jurisdiction is governed by 28 U.S.C. § 1367. Section 1367(a) provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Under § 1367(c), however, a district court has the discretion to decline to exercise supplemental jurisdiction over a state law claim where one or more of the following circumstances exists:

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). The Ninth Circuit has held that § 1367 requires that the court exercise supplemental jurisdiction pursuant to § 1367(a) unless such exercise is prohibited by § 1367(b) or one of the specifically enumerated exceptions set forth in § 1367(c) applies. *Executive Software N. Am., Inc. v. U.S. Dist. Court for the Cent. Dist. of Cal.*, 24 F.3d 1545, 1555-56 (9th Cir.1994).

Here, the Court declines to exercise supplemental jurisdiction because Plaintiff's claim raises novel and difficult questions of state law, the resolution of which will have significant implications for enforcement of the UCRA. In particular, the results of this and similar litigation will be

United States District Court
For the Northern District of California

dramatically different, depending on whose interpretation of Section 52(a) the Court adopts. If the Court adopts Plaintiff's proposed interpretation of the "each offense" language, she could potentially be awarded close to two million dollars in damages, while Defendant's proposed interpretation will allow for an award of only a nominal $4,000. While the Court finds it difficult to believe that the legislature intended such a large award under circumstances such as these, neither the case law nor the legislative history offered by Defendant as to the 2008 amendment require that the Court find that a plaintiff who encounters architectural barriers on a daily basis in her residence should be treated differently from plaintiffs who encounter architectural barriers, over a series of visits, to other types of business establishments. The court notes also that the tension between *Doran* and *Botosan* as to whether daily damages are available under Section 52 is salient in this case, where the question is how to determine statutory damages in the case of architectural barriers that continue to impede access on the part of a plaintiff with a disability over some period of time. Under these circumstances, the Court concludes that this is a matter of state law that is better left to the California courts to decide. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided as a matter of comity").

In addition, the exercise of supplemental jurisdiction shall be declined because Plaintiff's claim for statutory damages under the UCRA predominates over her ADA claim for injunctive relief. UC addressed Plaintiff's complaint about the door long ago and Plaintiff conceded that the door is now accessible. Accordingly, no injunctive relief is required. Rather, this case is driven by Plaintiff's claim for statutory damages. For this reason as well, the Court finds that exercise of supplemental jurisdiction over Plaintiff's state law claim is inappropriate.

United States District Court
For the Northern District of California

**V. CONCLUSION**

For the reasons stated above, the Court DENIES both Motions for Partial Summary Judgment and dismisses Plaintiff's UCRA Claim under 28 U.S.C. § 1367(c) on the basis that exercise of supplemental jurisdiction over that claim is inappropriate.

IT IS SO ORDERED.

Dated: August 2, 2011

JOSEPH C. SPERO
United States Magistrate Judge